**PAJ, INC. d/b/a Prime Art & Jewel, Appellant**

v.

**THE HANOVER INSURANCE COMPANY, Appellee.**

No. 05–04–01047–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 2005.

Baxter W. Banowsky, Banowsky Betz & Levine, P.C., Dallas, for Appellant.

R. Lynn Fielder, Fisk & Fielder, P.C., Dallas, for Appellee.

Before Justices BRIDGES, FITZGERALD, and FRANCIS.

## OPINION

Opinion by Justice FITZGERALD.

PAJ, Inc. d/b/a Prime Art & Jewel brought suit against The Hanover Insurance Company, seeking a declaration concerning Hanover's contractual obligation to defend or indemnify PAJ in copyright infringement litigation. The parties filed cross-motions for summary judgment below concerning the interpretation of their contract for insurance. The trial court granted Hanover's motion and denied PAJ's motion. PAJ challenges those rulings in five issues in this Court. For the reasons discussed below, we affirm the trial court's order.

### THE SUMMARY JUDGMENT PROCEEDINGS

The summary judgment proceedings were conducted on the basis of the following facts, to which the parties stipulated for purposes of summary judgment only:

1. PAJ is a manufacturer and distributor of jewelry.

2. Hanover provided general liability insurance to PAJ from July 10, 1993, through June 10, 1999, [under identified numbered policies].

3. On or about November 23, 1998, PAJ received a demand from Yurman Designs, Inc. ("Yurman") demanding that PAJ cease and desist from its marketing of a particular product line of jewelry claiming, among other things, a copyright violation (the "Yurman Claim").

4. In December 1998, Yurman filed a lawsuit against PAJ styled *Yurman Design, Inc. v. PAJ, Inc. d/b/a Prime Art & Jewel,* No. 98 CV 8697, 1998 WL 34324335, filed in the United States District Court for the Southern District of New York (the "Yurman Suit").

5. The Yurman Suit alleged, among other things, that PAJ had infringed Yurman's copyright on products marketed by Yurman.

6. PAJ received notice of the Yurman Suit on or about December 8, 1998.

7. PAJ did not notify Hanover of either the Yurman Claim or the Yurman Suit until it met with its insurance agent in anticipation of renewal,

sometime between April and June, 1999.

8.  PAJ did not notify Hanover of either the Yurman Claim or the Yurman Suit as soon as practical, rather, the delay in notifying Hanover was due to PAJ's failure to recognize that it might have insurance coverage for the Yurman Claim and/or the Yurman Suit until it met with its insurance agent.

9.  Hanover was not prejudiced by the untimely notice of the Yurman Claim and the Yurman Suit.

The parties further stipulated that the only issue to be presented in the summary judgment proceeding would be whether PAJ's untimely notice to Hanover would bar PAJ's recovery under the policy as a matter of law, despite the fact that Hanover was not prejudiced by the delay. Hanover's motion argued that an insured's violation of a notice provision is sufficient on its own to bar the insured's claim on a policy. PAJ's motion argued that untimely notice could only bar a claim if the delay caused prejudice to the insurer. The trial court, with the facts and issues thus limited, granted Hanover's motion for summary judgment and denied PAJ's. The court's order expressly found that Hanover did not have to show prejudice from PAJ's untimely notice. PAJ appeals.

■ When both sides have moved for summary judgment and one motion is granted and one denied, we address all questions presented and render the judgment the trial court should have rendered. *Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 583 (Tex. 2002).

### THE REQUIREMENT OF PREJUDICE

The parties agree that the dispositive issue in this appeal is essentially the same as the issue below: whether Hanover was required to show that it had been prejudiced by PAJ's untimely notice in order to rely on that untimely notice as a defense to coverage. PAJ offers three arguments in favor of requiring such a showing of prejudice: (1) the policy's notice provision is properly classified as a covenant rather than a condition, and only a material breach of a covenant (i.e., one that causes harm) will excuse performance by the non-breaching party; (2) the notice provision's classification is ambiguous, so it should be read in favor of coverage; and (3) even if the notice provision is a condition to coverage, Texas courts have still required a showing of prejudice before untimely notice will allow an insurer to avoid a claim. We address these arguments in turn.

### Classification of the Notice Provision

■ Initially, PAJ argues that the policy's notice provision is a covenant, rather than a condition. A condition to a contractual obligation is an act or event that must occur before there is a right to immediate performance and before there can be a breach of the contractual obligation. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). A contractual covenant, on the other hand, is a promise to perform, and a material breach of that promise can lead immediately to liability. *See McMahan v. Greenwood,* 108 S.W.3d 467, 484 (Tex. App.-Houston [14th Dist.] 2003, pet. denied) (citing *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex.1992)). Likewise, a material breach of a covenant by one contracting party excuses the performance of the other party. *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 692 (Tex. 1994). A material breach includes an element of harm or prejudice to the non-breaching party. *Id.* at 693.

■ The distinction between condition and covenant is significant in this case.

PAJ argues the contract's notice provision is a covenant. Given that understanding, PAJ's untimely notice would excuse Hanover's performance only if the untimely notice were a material breach, i.e., only if Hanover was prejudiced by the breach. Hanover, on the other hand, argues the notice provision is a condition to Hanover's performance. Thus, under Hanover's understanding, Hanover would have no obligation to perform unless PAJ gave timely notice, and prejudice to Hanover would be irrelevant.

Texas courts have consistently held that compliance with an insurance policy's notice provision is a condition precedent to the insurer's liability on the policy. *See, e.g., Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173–74 (Tex.1995) (quoting *Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367, 369 (Tex.1978)).[1] Given the settled nature of this classification, we look at the policy at issue to determine whether it expresses a clear intention to the contrary. At the outset, the policy's notice requirements fall under the heading "Commercial General Liability Conditions." The provisions require that "If a claim is made or 'suit' is brought against any insured, you must ... [n]otify us as soon as practicable." Under the same heading, the policy states that no one may "sue [Hanover] on this Coverage Part unless all of its terms have been fully complied with." The placement and language of these provisions support the conclusion that the insurer's obligations are conditioned on compliance with the policy's notice requirements. Accordingly, we do not find the provisions' language to be

antithetical to the well-settled understanding that notice to an insurer is a condition to the insurer's obligations under the policy. *See Hohenberg Bros. Co.*, 537 S.W.2d at 3 (no particular words necessary for existence of condition). This classification of the notice provision as a condition rather than a covenant defeats PAJ's first argument for the requirement to show prejudice from the untimely notice.

We resolve PAJ's third issue against it.

### *Ambiguity of Notice Provision*

■ PAJ argues next that if the notice provision of the policy is not a covenant, then the language of the provision is ambiguous. An ambiguous provision in an insurance policy, according to PAJ, must be construed against Hanover in a manner that favors coverage. If the language of a policy provision is worded so that it can be given a definite or certain legal meaning, then the provision is not ambiguous and we construe it as a matter of law. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). Our review of the notice provision under settled Texas law leads us to conclude it can be given definite meaning and legal effect. In the context at issue, the definite meaning and legal effect is that of a condition precedent to coverage. PAJ argues its reading of the provision is equally reasonable and plausible. We disagree, and a provision is not ambiguous merely because the parties offer conflicting interpretations. *Id.*

PAJ's fourth issue is not well-taken.

---

1. PAJ identifies a single case which, PAJ avers, classifies a notice provision as a covenant rather than a condition. *See St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F.Supp.2d 891 (N.D.Tex., 2003). We do not read *St. Paul* to classify its notice provision as a covenant. However, *St. Paul* does appear to require prejudice in a late-notice case based, in part, on the fact that the policy "does not expressly provide that the notice requirement is a condition precedent to liability." *Id.* at *8. We find no such requirement in any Texas case, and we decline to follow *St. Paul* on this point.

### Texas Courts' Interpretations of Notice Provisions

Finally, PAJ argues that even if the notice provision is an unambiguous condition precedent, Texas law still requires Hanover to show prejudice before it can defend on untimely-notice grounds. There are some cases decided under Texas law that classify a notice provision as a condition, but still require the insurer to show prejudice before violation of the condition becomes an effective defense. *See, e.g., Harwell,* 896 S.W.2d at 173–74 (policy itself expressly required showing of prejudice to defeat coverage on account of failure to provide notice). Accordingly, although we have determined the relevant notice provision is an unambiguous condition, we must look to Texas courts' treatment of similar provisions to determine whether a showing of prejudice might still be necessary.

In 1972, the Texas Supreme Court confirmed that if an insured breached the condition precedent regarding notice, then "liability on the claim was discharged, and harm (or lack of it) resulting from the breach was immaterial." *Members Mut. Ins. Co. v. Cutaia,* 476 S.W.2d 278, 279 (Tex.1972). The insured's failure to perform the condition was treated as an absolute defense to liability on the policy. When asked to imply a requirement to show harm from the untimely notice, the supreme court declined:

> Our conclusion is, however, that on balance it is better policy for the contracts of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature, rather than for this Court to insert a provision that violations of conditions precedent will be excused if no harm results from their violation.

*Id.* at 281.

■ In 1973, the State Board of Insurance did make a change to some insurance contracts in this regard, mandating attachment of an endorsement to all Texas general liability policies. The policy before us contains this endorsement:

### TEXAS CHANGES — CONDITIONS REQUIRING NOTICE

*With regard to Bodily Injury and Property Damage Liability,* unless we are prejudiced by the insured's or your failure to comply with the requirement, any provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will not bar coverage under this Coverage Part. (Emphasis added.)

Section I of PAJ's policy divides covered claims into two groups. "Coverage A" includes bodily injury and property damage liability, the categories specifically covered by the above endorsement. "Coverage B" includes personal and advertising injury liability, neither of which is addressed by the endorsement. The parties agree that the copyright infringement claim made the basis of the lawsuit below implicates only the policy's advertising injury section.

Hanover relies primarily upon *Gemmy Industries Corp. v. Alliance General Insurance Co.,* 190 F.Supp.2d 915 (N.D.Tex. 1998), *aff'd* 200 F.3d 816 (5th Cir.1999), and *McCutchin v. Trinity Universal Insurance Co.,* No. 05–97–00826–CV, 1999 WL 793367 (Tex.App.-Dallas Oct.6, 1999, no pet.) (not designated for publication). *Gemmy* affirmed a summary judgment in a posture very similar to the case before us. In that case, the insured waited more than a year after it had been sued for Lanham Act violations to seek coverage under the advertising injury portion of its general liability policy. The court conclud-

ed the delay constituted untimely notice as a matter of law. 190 F.Supp.2d at 921. The issue of prejudice was raised, but the court concluded that "by its own terms" the endorsement requiring a showing of prejudice to bar untimely claims for bodily injury or property damage did not apply. *Id.* at 922. To the contrary, the court concluded, "[t]here is no prejudice requirement under Texas law with respect to coverage for advertising injury." *Id.* (citing *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635–36 (Tex.App.-Houston [1st Dist.] 1993, writ denied)); *see also McCutchin*, 1999 WL 793367 at \*3 (endorsement does not require prejudice to avoid advertising injury liability).

PAJ, on the other hand, relies primarily on a pair of cases concluding that—regardless of the nature of the claim and coverage involved—a showing of prejudice is required before coverage is lost for failure to give an insurer timely notice. *See Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Resources*, No. Civ. A. 3:02–CV–1881–P, 2004 WL 389090 (N.D.Tex. Feb.25, 2004); *St. Paul Guardian Ins. v. Centrum G.S. Ltd.*,383 F.Supp.2d 891 (N.D.Tex., 2003). Both *Travelers* and *St. Paul* rely heavily on *Hanson Production Co. v. Americas Insurance Co.*, 108 F.3d 627 (5th Cir.1997), and *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex.1994), for the proposition that insurance companies must always show prejudice before a breach by the insured will bar coverage. We disagree that either of those cases should be read so broadly. *Hanson* states that the court was "strongly influenced" by the opinion in *Hernandez* in making its prediction as to what the Texas Supreme Court would do in its case. *Hanson*, 108 F.3d at 630. *Hernandez*, however, did not deal with a notice provision or any other condition precedent. Instead, the *Hernandez* court held that an insurer could refuse coverage under the policy's settlement-without-consent exclusion only when

the insurer was actually prejudiced by the insured's settlement. *Hernandez*, 875 S.W.2d at 692. We see a significant difference between a policy condition (performance of which is necessary to trigger any obligation for coverage) and a policy exclusion (which operates only after the obligation for coverage is in place). Accordingly, we decline to follow the federal trial court opinions that have equated the two and have created the extra-contractual obligation of an insurer to show prejudice following the insured's failure to perform a condition.

Although neither *Gemmy* nor *McCutchin* represents binding precedent for this Court, we conclude the reasoning in those opinions is sound. Before the policy endorsement requiring prejudice was added to general liability policies, failure to perform a notice condition was an absolute defense to liability on the policy. We read that policy endorsement to be limited to claims for bodily injury and property damage. For thirty years, the entities charged with overseeing these matters have declined to broaden the endorsement's language to include advertising injury, and we will not imply such a change in the policy before us. *See Cutaia*, 476 S.W.2d at 281.

We decide PAJ's fifth issue against it.

## CONCLUSION

We have rejected each of PAJ's arguments for reversing the trial court's order. We agree with the trial court that Hanover has shown itself entitled to judgment as a matter of law. Accordingly, we conclude the trial court correctly granted Hanover's motion for summary judgment and correctly denied PAJ's motion. We resolve the remainder of PAJ's issues against it and affirm the order of the trial court.